FRATES PORTER, Respondent, v. WILLIAM A. LEYHE, Appellant.

Kansas City Court of Appeals, November 23, 1896.

1. **Evidence:** FALSE REPRESENTATIONS TO THIRD PARTY: QUASI GUARDIAN: REPLEVIN. In an action of replevin to recover a horse on the ground of defendant's false and fraudulent representations in a trade with the plaintiff, an advising friend or *quasi* guardian of the imbecile plaintiff may be permitted to testify to the representations of the defendant to him where such representations were probably intended to aid in cheating the plaintiff.

2. **Replevin:** RESCISSION: HORSE TRADE: TENDER. If a plaintiff, induced by false and fraudulent representations, parts with his horse in a trade and immediately upon discovering the fraud tenders back the horse received, and demands a return of his own, there is a rescission of the contract and replevin will lie, notwithstanding the defendant refused to receive back his horse.

*Appeal from the Schuyler Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*Nat M. Shelton* and *Edward Higbee* for appellant.

(1) The issue was, did Leyhe warrant the horse to be sound and all right? If Leyhe told Green Drummond the horse was sound, it was irrelevant to the question at issue, because it did not tend to prove that Leyhe warranted the horse to plaintiff. It raised a collateral issue between Leyhe and Drummond, a similar but unconnected fact, not relevant to any issue. 1 Wharton, Ev. [1 Ed.], sec. 25, p. 17. As a general rule it is inadmissible, when the issue is whether A. did a particular thing, to put in evidence the fact that he did a similar thing at some other time. 1 Wharton, Ev. [1 Ed.], sec. 29, p. 31; 1 Greenleaf's Ev. [13 Ed.],

secs. 52, 448, 449; *Bank v. Murdock*, 62 Mo. 70, 4 syl., foot of p. 74; *Edmonston v. Henry*, 45 Mo. App. 346, 348; *Rose v. Bank*, 91 Mo. 399; 1 Greenleaf, Ev. [13 Ed.], sec. 449, note 6, p. 504. (2) Plaintiff's first instruction is not the law and is misleading. It ignores defendant's intention in making the statement; it was not a warranty unless so intended and understood. *Matlock v. Meyer*, 64 Mo. 531, 533; *Carter v. Black*, 46 Mo. 384, 385; *Rasnberger v. Ing*, 55 Mo. App., foot of p. 624; *Bank v. Murdock*, 62 Mo. 73. (3) As to the second instruction, we submit the evidence shows if any statement as to soundness of horse was made, it was in the forenoon before plaintiff went to see the horse; that the trade was broken off and this instruction should not have been given. *Ransberger v. Ing.*, 55 Mo. App. 621, 624, 625. (4) The third instruction is a palpable error. Here was two days' use of the horse. Every moment's use was an affirmance and a waiver of the right to rescind. Rescission must be prompt and vigorous and the property must be returned absolutely and left on defendant's premises. *McCulloch v. Scott*, 56 Am. Dec. 561, 13 B. Mon. 172; Tiedeman on Sales, sec. 115, p. 165; *Taylor v. Short*, 107 Mo. 384, 392, 393; *Och v. Railroad*, 130 Mo. 27, 46; 28 Am. & Eng. Encyclopedia of Law, p. 820, and notes 1 and 4, and top of p. 822; 21 Am. & Eng. Encyclopedia of Law, 77, 78, 79.

No brief for respondent.

GILL, J.—This is a suit in replevin, for the possession of a horse. It originated before a justice, was taken by appeal to the circuit court, and in both plaintiff was successful and defendant appealed.

The controversy grew out of a horse trade made between plaintiff Porter and defendant Leyhe. Accord-

ing to the testimony of a number of witnesses, intimately acquainted with plaintiff Porter and well qualified to give an opinion, Porter is and was a half-witted, weak-minded young man living in the vicinity of the defendant. And there was evidence tending to prove that defendant took advantage of plaintiff's mental condition and deceived and overreached him in the exchange of horses. Plaintiff gave the horse, for the recovery of which this suit was brought, for that of defendant, and received $10 "boot." The evidence tends further to prove that defendant fraudulently and knowingly misrepresented the quality of his horse and thereby induced the plaintiff to believe that said horse was sound and all right; whereas, in truth, the animal was not sound, but almost worthless. That by reason of these fraudulent practices, plaintiff was induced to make the trade. That within a few hours after the trade was completed, the plaintiff, on being properly advised by his friends that he had been imposed on, returned to defendant and made a tender back of the unsound horse and $10 received from the defendant, and demanded a rescission and return of the horse he had turned over to defendant. This all occurred Saturday afternoon. On the Monday morning following, plaintiff went again to defendant, made the same offer to return the horse and $10 and demanded the animal he had traded to defendant, but the latter again refused, and this suit was then begun.

After a careful examination of the record in this case, as we find it set out in defendant's abstract, we do not feel willing to disturb the judgment. During the pendency of the negotiations for the trade, it seems that defendant had a talk with one Drummond, with whom plaintiff resided, and who, as suggested, might be called a *quasi guardian* of the young man; and in that conversation Drummond testified that defend-

ant told him that he and "Frate" were negotiating, and over the objection of defendant's counsel, Drummond was permitted to testify that defendant assured him (Drummond) that the horse was a "nice black horse and will sell on the market better than Frate's; he is sound and all right," etc.   The objection now is that this evidence was incompetent, irrelevant, and was calculated to prejudice the defendant's cause.   Ordinarily this would be true, and the plaintiff would not be allowed to make a case of false and fraudulent representations by showing that representations of the character alleged to have been made to the plaintiff were made to others.   But under the circumstances of this case we think it was not improper to admit this evidence.   A question of fraud was being investigated, and the law permits a pretty wide latitude in showing up the circumstances.   Drummond, it was known, was the party with whom young Porter resided, and he was evidently considered a kind of guardian to the latter.   This talk, then, which defendant had with Drummond, was probably intended to aid in cheating plaintiff out of his horse.   The assurance uttered by defendant to Drummond that it was a nice horse and free from fault or blemish was calculated to quiet the latter and prevent his interference.   But even if technically erroneous, we do not think the error was serious enough to warrant us in reversing the judgment.

The criticisms on instructions given are without merit.   Taken as a whole, they were quite favorable to the defendant.   This is not an action on a warranty, but is rather a suit in replevin based on a rescission of a contract of sale or exchange.   If the defendant, by false and fraudulent representations, induced this ignorant young man to part with his horse; and if the plaintiff immediately on discovering that he had been cheated and defrauded, went to defendant and tendered

back all that he had received and demanded a return of his horse, this constituted a rescission of the contract and the parties then stood as if no trade had ever been made. This was, in effect, the tenor of the instructions given and they were correct. The tender, as proved, was all the law requires. Plaintiff could do no more than take the horse and money he had obtained from defendant and offer to surrender them, which he did. It is true that the defendant refused to receive back the horse or his money, but such refusal can not operate to lessen or destroy the legal effect of the tender. Nor is there anything in all the evidence supporting the claim that the plaintiff abandoned or waived his right to rescind. At all events this feature of the defense was fairly submitted to the jury by defendant's eighth instruction, as modified by the court.

The judgment of the circuit court will be affirmed. All concur.